**IN THE UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF TENNESSEE**
**COLUMBIA DIVISION**

| | | |
|---|---|---|
| **WILLIE SUE POWELL,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 1-05-0012** |
| | ) | **Judge Haynes** |
| **PREMIER MANUFACTURING SUPPORT SERVICES, INC.; PREMIER MANUFACTURING SUPPORT SERVICES LP OF TENNESSEE; and THE HARTFORD LIFE GROUP INSURANCE COMPANY,** | ) | |
| | ) | |
| **Defendants.** | ) | |

# MEMORANDUM

Plaintiff, Willie Sue Powell, filed this action under the Employee Retirement Income Security Act, ("ERISA") 29 U.S.C. 1001 et seq., against the Defendants: Premier Manufacturing Support Services, Inc., an Ohio corporation and Premier Manufacturing Support Services LP of Tennessee, an Illinois corporation, ("the Premier Defendants") as well as The Hartford Life Group Insurance Company ("Hartford")[1], a Connecticut corporation. Plaintiff also asserts various state law claims. The Plaintiff invokes jurisdiction under 28 U.S.C. 1331, the federal question statute, and 28 U.S.C. 1332, the federal diversity statute.

Plaintiff's claims arise out of her husband's death and the gravamen of her complaint is that the Defendant Hartford improperly denied her full benefits under Premier Manufacturing's ERISA Plan that includes accidental death and dismemberment insurance policy issued by Defendant

[1]The policies relevant to this case were issued to Premier by Hartford Life and Accident Insurance Company, not Hartford Life Group Insurance Company. Thus, Hartford Life and Accident Insurance Company is the proper defendant in this action and are added as the real party in interest under Fed. R. Civ. P. 19(a).

Hartford. Plaintiff alleges that this policy covers the death of her husband. Plaintiff seeks a judgment of forty-five thousand dollars ($45,000.00)[2] that she alleges to be the balance of unpaid benefits under the Premier Defendants' ERISA plan as well as prejudgment interest, her attorney fees and costs.

Before the Court are: (1) Plaintiff's motion for judgment on the record (Docket Entry No. 21); (2) Defendant Hartford's motion for judgment on the record (Docket Entry No. 22); and (3) the Premier Defendants joint motion for judgment on the record (Docket Entry No. 24).[3]

In her motion, Plaintiff contends, in sum, that the de novo standard applies to the Defendants' wrongful denial of benefits because of the Defendant Hartford's conflict of interest, arising from Defendant Hartford's role as decision-maker on Plaintiff's benefit claim and Hartford's status as the payee of the coverage at issue. Alternatively, Plaintiff argues that Defendant Hartford's denial of Plaintiff's claim for benefits was arbitrary and capricious.

In its motion, Hartford argues, in essence: (1) that Plaintiff's state law claims are preempted ERISA; (2) that Defendant Hartford did not act arbitrarily and capriciously in denying Plaintiff's claim for benefits in excess of twenty-five thousand dollars ($25,000.00); and (3) that Defendant Hartford conducted a thorough review and had reasonable basis for its decision to deny Plaintiff benefits in excess of twenty-five thousand dollars ($25,000).

In their motion, the Premier Defendants incorporate and adopt Hartford's motion. These Defendants further contend that although they are named plan administrators in the relevant plan

---

[2]Defendant awarded Plaintiff $25,000 in benefits under the Plan, but Plaintiff asserts entitlement under the Plan to a total of $70,000 in accidental death benefits.

[3]A motion for judgment is an appropriate procedural method to obtain judicial review under ERISA. Wilkins v. Baptist Healthcare Sys., Inc., 150 F.3d 609, 619 (6th Cir. 1998).

documents, Hartford has the full discretion and authority to determine eligibility for benefits and to construe and interpret all terms and provisions of the plan. To the extent Plaintiff asserts state law claims, these Defendants also argue that ERISA preempts Plaintiff's state law claims.[4]

For the reasons set forth below, the Court concludes Plaintiff's state law claims are preempted by ERISA as those claims relate to an ERISA plan. As to the merits of Plaintiff's ERISA claim, the Court finds that Plaintiff performed all of her obligations to be entitled to the insurance benefits for her husband's death. The Court also finds that Defendant Hartford's denials of Plaintiff's benefits claim lack a statement of the specific reasons or a reasoned basis for the denial as required by Sixth Circuit precedent. Thus, the Court concludes that the Defendant Hartford's denial of Plaintiff's benefits claim was arbitrary and capricious under Sixth Circuit precedent and the administrative record in this action.

**A. Review of the Factual Record**

Premier first hired Plaintiff as an hourly employee on July 13, 1993. At that time, Plaintiff was eligible for voluntary term life insurance for both herself and her dependents, but Plaintiff did not elect coverage. On June 15, 1999, Plaintiff submitted a voluntary term life insurance enrollment form for herself and her spouse. Plaintiff elected coverage for herself in the amount of $100,000 and dependent coverage for her spouse in the amount of $25,000. At that time, Provident Life and Accident Insurance Company ("Provident") was the carrier for Premier's group benefits plan.

On January 1, 2002, Hartford replaced Provident as the administrator and insurer of

[4]Plaintiff has agreed to dismissal of her state law claims, (Docket Entry No. 15), but has not done so.

Premier's employee welfare benefit plans. By virtue of her enrollment with Premier's previous carrier, Plaintiff was automatically eligible for life insurance coverage with Hartford in the same amounts as under the Provident policy on June 15, 1999: $100,000 for herself and $25,000 for her spouse. The Plan provides for supplemental dependent spouse life insurance as:

> "a) a Guaranteed Issue amount You elect in increments of $5,000, subject to a maximum of $30,000 without Evidence of Good Health; or b) a maximum amount You elect in increments of $5,000, subject to a maximum of $100,000 with Evidence of Good Health."

Id. at 012. On April 1, 2002, Plaintiff became a salaried employee and on April 4, 2002, Plaintiff elected spouse coverage of $30,000 and requested supplemental life insurance enrollment form to increase coverage for herself and for her spouse. For her spouse's supplemental coverage, Plaintiff requested an increase to $70,000 in coverage.

Plaintiff seeks recovery of benefits for the death of her spouse under a group life insurance policy issued by Hartford to Premier Manufacturing Support Services, Inc., policy number GL-043573 (the "Policy"), and an accidental death policy also issued to Premier simultaneously, policy number 33-ADD-S0521 I (the "AD&D Policy") (collectively the "Policies"). Plaintiff made payments for these policies Supplemental insurance coverage and those payments that were deducted from her payroll check. (Docket Entry No. 18, Administrative Record ("AR") 117).

Because Plaintiff's enrollment form to increase coverage was submitted more than 31 days after the initial enrollment time period for increased coverage, Plaintiff had to complete an Evidence of Good Health form. The Plan states that evidence of good health is required in the following situations:

> "if (1) you enroll for coverage for Yourself or Your Dependent more than 31 days after the date You are first eligible to do so; (2) You elect no coverage for Yourself or Your Dependent when eligible to do so and later opt for coverage.
>
> If Evidence of Good Health is not approved in the situation(s) described above, no coverage, including guaranteed Issue Amount, will become effective. Evidence of Good Health must be provided at Your own expense."
>
> * * * * *
>
> "Evidence of Good Health is required if you elect to increase coverage."

(A.R. 0009). Hartford's policy defines Evidence of Good Health as "information about a person's health from which We can determine if coverage or increases in coverage will be effective. Information may include questionnaires, physical exams, or written documentation as required by Us [Hartford]." A.R. 0009.

Plaintiff completed the Evidence of Good Health form for herself and her spouse. Plaintiff and her spouse signed the "Personal Health Statement" on April 16, 2002, and submitted the form to Premier. In sum, the requirements on a Evidence of Good Health or "Personal Health Statement" were basic age height and weight, but the language included authorized releases of medical information about Plaintiff and her spouse. The application reads as follows:

> "In order to properly underwrite your request for group benefits, we must collect certain information about your physical condition. You are the most important source of information about your health, and to the degree it is possible, we will rely on only information obtained from you. If we do find we are required to contact medical professionals or institutions, we will contact them directly using the authorization on the front side of this form."

(A.R. at 0105).

In relevant part, this "Personal Health Statement " that was completed by the Plaintiff and

her spouse reads as follows:

04/23/2004 14:17 FAX LINDA 006

**Employer Section** **Personal Health Statement**

Please print in dark ink. Initial any changes.

Company Name: PREMIER MFG SUPPORT SERVICE

Division Name (If Applicable):

Mailing Address: 2828 HIGHLAND AVE

City: CINCINNATI ST: OHIO Zip: 45212 Policy Number: 0745573

Contact Person: SUE HELLIWELL Telephone Number: (513)731-5590 E-Mail: SHELLIWELL@PREMIER...

Employee Name: WILLIE SUE POWELL Employee Social Security Number: 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

**1. Who Requires a Personal Health Statement**

Check box of each applicant who requires evidence of good health with a Personal Health Statement (PHS), and specify the reason(s) why: Check all reasons that apply:

Identify Applicants Requiring a Personal Health Statement

E [X] Employee — Late Entrant ☐ (employee did not enroll during eligibility period – usually 31 days from date of hire) — Over Guaranteed Issue Limit ☑ (coverage up to this limit does not require evidence of good health) — Opted up to higher level of coverage ☐ (e.g. from 1- to 2 times earnings)

S [X] Spouse — Late Entrant ☐ (did not enroll during eligibility period or within 31 days of a change in family status) — Over Guaranteed Issue Limit ☑ (coverage up to this limit does not require evidence of good health) — Opted up to higher level of coverage ☐ (e.g. from $10,000 – $20,000 of coverage)

C ☐ Child — Late Entrant ☐ (did not enroll during eligibility period or within 31 days of a change in family status) — Over Guaranteed Issue Limit ☐ (coverage up to this limit does not require evidence of good health) — Opted up to higher level of coverage ☐ (e.g. from $10,000 – $20,000 of coverage)

Refer to your Policy Contract and employee records for coverage amounts, eligibility period (for Late Entrant determination), Guaranteed Issue limits, exceptions for salary increases and rules for "opting up."

**2. Coverage Summary**

For each applicant, complete all three columns. Life Coverages: Be sure to include Basic Life coverage amounts for all applicants requesting additional life coverage. Refer to employee records for Current Coverage Amounts (usually for Life coverage calculate 1,2,3 (etc.) times annual earnings to arrive at the dollar amount). Disability Coverages: Refer to employee records for the benefit percentage selected and calculate what that percentage is of their annual salary. Then calculate the monthly benefit amount (divide by 12) for LTD and/or the weekly benefit amount (divide by 52) for STD.

| Applicants for Life Coverage | Current Coverage Amount | Additional Amount Applied For | Total Coverage |
|---|---|---|---|
| Employee: Basic Life | $ | $ | $ |
| Suppl. Life or Voluntary Life | $ | $ 140,000 | $ 140,000 |
| Spouse: Basic Life | $ | $ | $ |
| Suppl. Life or Voluntary Life | $ | $ 70,000 | $ 70,000 |
| Dependent: Child Life | Cumulative for __ (how many?) children $ | Cumulative for __ (how many?) children $ | Cumulative for __ (how many?) children $ |
| **Applicants (employees only) for Disability Coverage** | **Current Benefit Amount** | **Additional Benefit Amount** | **Total Benefit Amount** |
| Employee: Long Term Disability | $ per month | $ per month | $ per month |
| Employee: Short Term Disability | $ per week | $ per week | $ per week |

GR-11461-10 (ED. 10/00) Employer Copy Questions? Call 800-331-7234

04/23/2004 02:17PM

HFD WP 0103

## Employee Section — Personal Health Statement

Please print in dark ink. Initial any changes.

Employee Name - First Name Willie MI S Last Name Powell

Mailing Address 2041 Gainer Rd

City Mt. Pleasant ST TN Zip 38474

Social Security Number 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 Occupation Manager

Daytime Telephone 931-285-2298 E-Mail

**BEFORE MAILING**
- Check that all questions are answered, form is dated and signed.
- Keep a copy for your records.

MAIL THIS FORM — BOTH LEFT & RIGHT SIDES OF THE TOP, WHITE COPY TO:
Hartford Life
Group Medical Underwriting
P.O. Box 2999
Hartford, CT 06104-2999

## 1. Applicants Requiring Health Evaluation

List below the names of applicants identified in Employer Section 1.

| First Name, MI, Last Name | Employee/Spouse/Child | HEIGHT (ft/in) Required | WEIGHT (lbs) Required | DATE OF BIRTH | SEX |
|---|---|---|---|---|---|
| Willie Sue Powell | [X] E [ ] S [ ] C | 5' 7" | 225 | 05 10 59 | [ ] M [X] F |
| Leroy Powell | [ ] E [X] S [ ] C | 6' 1" | 220 | 06 16 53 | [ ] M [ ] F |
| | [ ] E [ ] S [ ] C | | | | [ ] M [ ] F |
| | [ ] E [ ] S [ ] C | | | | [ ] M [ ] F |

[redacted]

If additional space is required, please attach a separate sheet. Sign and date each sheet.
Important: See reverse side. Your signature indicates that you have read this important information:

BOTH THE EMPLOYER AND EMPLOYEE SIDES OF THIS FORM MUST BE RECEIVED BY HARTFORD LIFE WITHIN 60 DAYS OF THE SIGNATURE DATE. ITS INFORMATION WILL BE CONSIDERED CURRENT FOR NO LONGER THAN 90 DAYS FROM THE SIGNATURE DATE.

I hereby certify that the above statements and answers are complete and true to the best of my knowledge and belief concerning the past and present state of health and medical history of the persons to whom the statements and answers relate. I agree that this document and all its contents shall form a part of my enrollment request for group benefits. This information may be used by the Hartford Life Insurance Company or Hartford Life and Accident Insurance Company (for full-insured coverages) or my employer/administrator (for self-funded coverages), to decide if the person(s) is eligible for coverage.

I authorize any physician, medical or health practitioner, counselor, therapist, hospital, clinic or other medical or medically-related facility, insurance or reinsurance company, the Medical Information Bureau, Inc., consumer reporting agency or employer that has records or knowledge of me or my health or my children or their health to give the Hartford Life Insurance Company or Hartford Life and Accident Insurance Company or its legal representative, any non-medical information or medical information that relates to: 1) Pre-existing or current illnesses, sicknesses, diseases, disabilities, disorders, accidents, injuries or any other health conditions; 2) Confinements in hospitals, medical facilities, or medical clinics; 3) Outpatient treatment in hospitals, hospital emergency rooms, medical facilities or clinics, or by medical doctors or other health practitioners; 4) Drug abuse, alcohol abuse, or mental health protected by Federal Law; 5) Counseling or therapy, for the purpose of determining eligibility for insurance or eligibility for benefits under an existing policy. This information will be treated as confidential. I acknowledge that I have read all the information on the reverse side of this page.

x Willie Sue Powell
EMPLOYEE'S SIGNATURE (required)

4.16.2002
DATE SIGNED

x Leroy Powell
SPOUSE'S SIGNATURE (required only if applying for coverage)

4.16.2002
DATE SIGNED

GR-11481-10 (ED. 10/00)

Employer Copy

Questions? Call 800-331-7234

04/23/2004 02:17PM

Case 1:05-cv-00012 Document 36 Filed 06/01/06 Page 7 of 19 PageID #: 289

**I authorize** The Hartford Life Insurance Company or Hartford Life and Accident Life Insurance Company to release information in its file to the Medical Information Bureau, Inc., and other Insurance companies to whom I or my children may apply for Life or Health Insurance, or other persons or organizations, performing business or legal services in connection with this application or a claim, or as may be otherwise lawfully required. . . .

## MEDICAL UNDERWRITING DISCLOSURE FORMAT

The following summary of information practices is being provided in accordance with our policy on privacy.

* * *

### Collection of Information

In order to property underwrite your request for group benefits, we must collect certain information about your physical condition. You are the most important source of information about your own health, and to the degree it is possible, we will rely on only information obtained from you. If we do find we are required to contact medical professionals or institutions, we will contact them directly using the authorization on the front side of this form.

### Disclosure

Information we collect about you will not be given to anyone without your consent, except when it is necessary for conducting our business. The only people who have access to the information are employees who service your benefits or claims and those who have a regulatory or legal need for the information. In other situations, we will ask you for written authorization to disclose information about you.

### Access and Correction

In most cases the only information we will collect is provided by you. You are encouraged to keep a copy of this form for your record. If we find it is necessary to contact medical providers or institutions, there are procedures by which you can obtain access to the personal information about you which we have collected. Upon written request, we will provide you with information in your file. Medical information will be disclosed only through a physician you designate, unless otherwise authorized by the medial professional or Institution who provided such information to us. Details regarding your right to correct or amend information in your file will be furnished upon written request.

We hope you find this summary helpful. If you have any further questions about privacy policy and practices, please write to:

**HARTFORD LIFE**
**Group Medical Underwriting**
**P.O. Box 2999**
**Hartford, CT 06104-2999**



Case 1:05-cv-00012 Document 36 Filed 06/01/06 Page 8 of 19 PageID #: 290

We take our responsibilities in handing your personal information very seriously.

(A.R. 0103, 0104).

Under Hartford's policy, Plaintiff's request for increased coverage requires Hartford's approval. The Plan further states, "Your Employer and/or Benefit Administrator will notify You of approvals. We [Hartford] will notify You, in writing, of any disapprovals." Id. Under the Plan, coverage begins "the date We approve Evidence of Good Health which we may have required." Id. at HFD WP 0014.

On May 3, 2002, Hartford sent the first denial letter to the Premier Defendants denying Plaintiff's request for an increase in the coverage amounts and gave its reasons.

> **"We have evaluated the health information [Plaintiff] for whom coverage was requested. Based on that evaluation and our medical underwriting guidelines, we cannot approve the request for insurance coverage.**
>
> * * *
>
> In addition, we must note that with the denial of coverage, all dependents listed on the employee's Personal Health Statement, **in particular Leroy for $70,000, become ineligible for the coverage requested.**
>
> We notified [Plaintiff] of our decision by letter."

(AR at 106) (emphasis added).

Plaintiff insists that she never received notification of Hartford's denial, (A.R. 100) and the administrative record does not contain any letter from Hartford to the Plaintiff denying her application for benefits or her evidence of good health form, as required by the Plan. In any event, premiums for Hartford's supplemental policy were deducted from Plaintiff's payroll check beginning in 2002 until the denial of her death benefit claim in 2004. (A.R. 100).

On November 15, 2003, Plaintiff's spouse was killed in an automobile accident. On January 13, 2004, Plaintiff filed her claim for insurance benefits together with a proof of death

form detailing the automobile accident that caused her husband's death. Premier submitted Plaintiff's claim for death benefits to Hartford, but Hartford initially denied Plaintiffs claim for benefits. In a second denial letter dated March 26, 2004, Hartford denied Plaintiff's claim (A.R. 109). Hartford's reason was that Plaintiff's husband "was [not] covered for Supplemental Dependent Group Life Insurance benefits" (A.R. 109) because Hartford's underwriting unit "do[es] not have any record of Mr. Powell submitting Evidence of Good Health for the Supplemental Group Life coverage. **Since Mr. Leroy Powell did not submit medical evidence as required by the policy with Premier Manufacturing Support Services Inc.; the Supplemental Group Life Insurance benefit is not payable through Hartford Life Insurance Company.**" (AR 109, 111)(emphasis added).

In the letter dated April 6, 2004, Plaintiff contested Hartford's denial of benefits and argued that she did not receive of any rejection letter nor any letter requesting evidence of her husband's insurability. (A.R. 100). Plaintiff also cited the deduction of premiums for the contested policy from her pay check since 2002. Id. On April 16, 2004, Premier also objected to Hartford's denial, (A.R. 98) insisting that the $30,000 minimum coverage under the initial policy remained available notwithstanding the denial of supplemental coverage. Id. at 99. Premier also sought coverage for the policy for which Plaintiff had paid premiums since 2002. Id.

In a third letter dated May 4, 2004, from Hartford's senior examiner for benefit management services, Hartford approved a payment of $25,000 in benefits, but denied Plaintiff's claim for supplemental coverage. (A.R. 94-96). Hartford's letter explained, in pertinent part:

> We have completed our review of the additional information along with



Case 1:05-cv-00012 Document 36 Filed 06/01/06 Page 10 of 19 PageID #: 292

the previously submitted information and have determined that the documentation submitted in support of the claim does not establish that Mr. Leroy Powell was covered for additional Supplemental Group Life Insurance benefits through Hartford Life and Accident Insurance Company, at the time of his death. Accordingly, additional Supplemental Group Life Insurance benefits are not payable to you, under the terms of the Policy.

* * *

On June 15, 1999 you enrolled for $25,000 of spouse Supplemental Life Insurance as indicated on the Voluntary Term Life Enrollment Form. The Benefit Enrollment Form dated April 4, 2002 signed by you, indicates that you wished to increase your amount of spouse Supplemental Life Insurance to $70,000.

**According to Policy provision, Evidence of Good Health is required if you elect to increase coverage. You completed a Personal Health Statement for the additional amount of spouse life insurance on April 16, 2002. Our group medical underwriting department reviewed the personal health statement and declined the additional amount of spouse coverage on May 3, 2002.**

Since Mr. Leroy Powell was not approved for additional coverage, as required by the terms of the Policy with Premier Manufacturing Support Services, Inc. the additional Dependent Supplemental Group Life Insurance amount is not payable through Hartford Life Insurance Company.

(A.R. 94, 95). (emphasis added).

Plaintiff refused to accept Hartford's decision to pay her $25,000 benefit award and in a letter to Hartford dated June 30, 2004, Plaintiff insisted that the minimum benefit under the Plan had always been $30,000. (A.R. 90). Plaintiff again denied receipt of any notice of a denial of her request for an increase in coverage for herself or her spouse and repeated that she paid premiums for this policy since 2002 for the increased coverage thereby entitling her to the $70,000 benefit. Id. In addition, Plaintiff also requested a "double indemnity" for her spouse's



Case 1:05-cv-00012 Document 36 Filed 06/01/06 Page 11 of 19 PageID #: 293

accidental death.[5] Id.

Hartford submitted Plaintiff's claim to its appeal unit for review. Hartford's appeal unit relied upon all documentation and information submitted by Plaintiff and/or Premier. In its fourth letter dated August 11, 2004, Hartford's appeal unit upheld the earlier decision to deny benefits in excess of $25,000, stating, in pertinent part:

> We have received the appeal that you submitted in connection with your claim for Dependent Supplemental Life Insurance benefits. This policy funds Premier Manufacturing Support Services, Inc. Group Life Insurance Employee Benefit Plan, under Hartford Life and Accident Insurance Company Policy 0GL043573. The plan is governed by ERISA and federal common law.
>
> On May 4, 2004, we have approved the Dependent Supplemental Life Insurance in the amount of $25,000.00.
>
> **We have completed our review of the additional information along with the previously submitted information and have determined that the documentation submitted in support of the claim does not establish that Mr. Leroy Powell was covered for additional Supplemental Group Life Insurance benefits through Hartford Life and Accident Insurance Company, at the time of his death. Accordingly, additional Supplemental Group Life Insurance benefits are not payable to you, under the terms of the Policy.**
>
> * * *
>
> We based our decision to deny your claim for benefits on Policy Language and all documents contained in the claim file, viewed as a whole, including the following specific information:
>
> (1) Benefit Enrollment Forms completed by Willie Sue Powell on 6/15/99 and 4/4/02.
> (2) Hartford Life Personal Health Statement for applicants Willie Sue Powell and Leroy Powell, completed by Willie Sue Powell on 4/16/02.
> (3) Letter dated 5/3/02 from Hartford Life Medical Underwriting Department to Premier Manufacturing Support Services, Irk.

---

[5] Plaintiff has since dismissed this claim. (Docket Entry No. 21, Plaintiff's Brief at p. 1, n.1.).

> On June I5, 1999 you enrolled for $25,000 of spouse Supplemental Life Insurance as indicated on the Voluntary Term Life Enrollment Form. The Benefit Enrollment Form dated April 4, 2002 signed by you, indicates that you wished to increase your amount of spouse Supplemental Life Insurance to $70,000.
>
> According to Policy provision, Evidence of Good Health is required if you elect to increase coverage. You completed a Personal Health Statement for the additional amount of spouse life insurance on April 16, 2002. **Our group medical underwriting department reviewed the personal health statement and declined the additional amount of spouse coverage on May 3,2002.**
>
> Since Mr. Leroy Powell was not approved for additional coverage, as required by the terms of the Policy with Premier Manufacturing Support Services, Inc. the additional Dependent Supplemental Group Life Insurance amount is not payable through Hartford Life Insurance Company.

(AR 094). (emphasis added).

**B. Conclusions of Law**

As to the Defendants' preemption argument, ERISA preempts "any and all State laws insofar as they may now or hereafter relate to an employee benefit plan." 29 U.S.C. §1144(a)."State law" is defined to include " all laws, decisions, rules, regulations or other state action having the effect of law. 29 U.S.C. §1144(c)(1). Preemption under ERISA is "deliberately expansive". Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 45-46 (1987). Yet, ERISA's preemption provisions are not comprehensive. Marks v. Newport Credit Group, Inc., 342 F.3d 444, 453 (6th Cir. 2003). "It is not the label placed on the state law claim that determines whether it is preempted, but whether in essence such a claim is for the recovery of an ERISA plan benefit." Cromwell v. Equicor-Equitable HCA Corp., 922 F.2d 1272, 1276 (6th Cir. 1991). Upon review of the record, the Court concludes that the Plaintiff's state law claims are for benefits under an ERISA plan and those claims are preempted. Cromwell, 922 F.2d at 1276 ; 29 U.S.C. § 1144(a).

For the determination of the governing standard of review, the issue is whether the plan at

issue grants the administrator the discretion to determine eligibility for benefits. Firestone Tire and Rubber Co. v. Bruch, 489 U.S 101, 115 (1989); Miller v. Metro Life Ins. Co., 925 F.2d 979, 983 (6th Cir. 1991). If the ERISA plan expressly grants the plan administrator "discretionary authority to determine eligibility for benefits or to construe the terms of the plan," then the arbitrary and capricious standard of judicial review applies. Firestone, 489 U.S. at 115; Yeager v Reliance Standard Life Ins. Co., 88 F.3d 376, 380 (6th Cir. 1996). In summary, under the arbitrary and capricious standard, the Court must decide if the decision were made in good faith, is not contrary to the facts and law, i.e., whether the Administrator's decision is "rational in light of the plan's provisions." Daniel v. Eaton Corp., 839 F.2d 263, 267 (6th Cir. 1988).

Absent such language in the plan, the de novo standard of review applies. Firestone, 489 U.S. at 115. Under the de novo standard, the district court is "to determine whether the administrator or fiduciary made a correct decision," Perry v. Simplicity Eng'g, 900 F.2d 963, 966 (6th Cir. 1990), without deference to the fiduciary's determination of benefits nor presumption as to the correctness of the fiduciary's decision. Id.

Here, the Premier Defendants' Plan designates Hartford as the Administrator of the Plan: "We [Hartford] have full discretion and authority to determine eligibility for benefits and to construe and interpret all terms and provisions of the Policy." (Docket Entry No. 18, AR at 029). Given that the Plan expressly grants Hartford full discretion to determine benefits and the administrative record reflects that in fact, Hartford exercised such authority, the Court concludes that the arbitrary and capricious standard applies to Plaintiff's claim.

The next issue is the determination of whether a conflict of interest exists here. "[A] conflict of interest exists when the insurance decides whether the employee is eligible for



Case 1:05-cv-00012 Document 36 Filed 06/01/06 Page 14 of 19 PageID #: 296

benefits and pays those benefits." Evans v. Unumprovident Corp., 434 F.3d 866, 876 (6th Cir. 2006). In Killian v. Healthsource Provident Adm'rs, Inc., 152 F.3d 514 (6th Cir. 1998), the Sixth Circuit defined this conflict for ERISA purposes.

> "[T]here is an actual, readily apparent conflict . . . ., not a mere potential for one" where a company both funds and administers an LTD policy, because "it incurs a direct expense as a result of the allowance of benefits, and it benefits directly from the denial or discontinuation of benefits." . . . [B]ecause [the] defendant maintains such a dual role, "the potential for self-interested decision-making is evident."

Id. at 521.

Yet, if a fiduciary has a conflict of interest in benefit determinations, "that conflict must be weighed as a 'facto[r] in determining whether there is an abuse of discretion.'" Firestone, 489 U.S. at 115 (quoting Restatement (Second) of Trusts § 187, Comment d (1959). Less deference may be given upon proof that the denial was motivated by self-interest or bad faith. See Peruzzi v. Summa Medical Plan, 137 F.3d 431, 433 (6th Cir. 1998).

The administrator's decision must be "based on a reasonable interpretation of the plan," and it must be "possible to offer a reasoned explanation, based on the evidence, for a particular outcome." Evans, 434 F.3d at 876 (quoting McDonald v. Western Southern Life Ins., 347 F.3d 161, 172 (6th Cir. 2003). The administrator's decision "will be upheld 'if it is the result of a deliberate reasoned process and if it is supported by substantial evidence." Evans, 434 F.3d at 876 (quoting Perry v. United Food & Commercial Workers Dist. Unions, 405 & 442, 64 F.3d 238, 241 (6th Cir. 1995)). This judicial review "inherently includes some review of the quality and quantity of the medical evidence and the opinions on both sides of the issue." Evans, 434 F.3d at 876 (quoting McDonald, 347 F.3d at 172). As a general rule, the administrator's written decision and the information in the administrative record are the bases for judicial review. Peruzzi, 137 F. 3d

at 433-34.

When Plaintiff became an hourly to a salaried employee of Premier in April 2002, she had a basic coverage of $25,000, but she completed a supplemental life insurance enrollment form requesting an additional $70,000 coverage under her employer's supplemental life and accidental death insurance for her spouse. Because her request was more than 31 days after Plaintiff became eligible for coverage and was not associated with a change in family status under the Plan, Plaintiff's request for any increase in coverage required a Personal Health Statement and Hartford's approval. Plaintiff and her spouse completed and signed Personal Health Statement on April 16, 2002, and that form was submitted to Hartford. (A.R. 0104).

After reviewing this Personal Health Statement and Plaintiff's request for supplemental coverage, Hartford's first denial letter stated: "**We have evaluated the health information for whom coverage was requested. Based on that evaluation and our medical underwriting guidelines, we cannot approve the request for insurance coverage....**In addition, we must note that with the denial of coverage, all dependents listed on the employee's Personal Health Statement, **in particular Leroy for $70,000, become ineligible for the coverage requested."** (A.R. 0106) (emphasis added). In a second denial letter, Hartford stated: "**Since Mr. Leroy Powell did not submit medical evidence as required by the policy with Premier Manufacturing Support Services Inc.; the Supplemental Group Life Insurance benefit is not payable through Hartford Life Insurance Company.**" (AR 109, 111)(emphasis added). These two letters are contradictory as the first letter is based upon a medical evaluation and the second letter is based upon a procedural default.

Hartford's third denial letter states: **"According to Policy provision, Evidence of Good**

**Health is required if you elect to increase coverage. You completed a Personal Health Statement for the additional amount of spouse life insurance on April 16, 2002. Our group medical underwriting department reviewed the personal health statement and declined the additional amount of spouse coverage on May 3, 2002."**(AR 95). (emphasis added). The third letter cites a medical assessment that contradicts Hartford's second letter citing a procedural default. In its fourth denial letter, Hartford recited the procedural history of the claim and quoted relevant portions of the Plan, but did not provide any specific reasons for denial of coverage.

Under Evans, Hartford must offer a reasoned explanation, based on substantial evidence, for the particular outcome. After its review of Hartford's denial letters, the Court finds inconsistent reasons for Hartford's denials of supplemental coverage. Except for the second denial letter, the Court cannot discern in the other denial letters any specific reason(s) or particular evidence for Hartford's denial. In the first, third and fourth letters, Hartford acknowledges that Plaintiff and her spouse submitted a completed statement of health form that included a release of their medical records. Yet, Hartford does not refer to a specific medical condition or factual basis for any medical evaluation for the denial of coverage. Without a specific statement of the medical reason(s) for the denial of coverage, the appeal rights under the ERISA plan here are effectively rendered meaningless. Plaintiff paid for coverage for her spouse and those payments were accepted.

In sum, from the Court's review, it is impossible to determine a reasoned basis for Hartford's denial of coverage. Such omissions foster arbitrary and capricious decisions on coverage. The fact that Hartford is the administrator and payor of the benefits at issue presents a conflict of interest that enhances this conclusion of a unreasoned decision. Thus, the Court

concludes that Hartford's denial of Plaintiff's benefits claim was arbitrary and capricious.

The next issue is an awarded of prejudgment interest. The district court possesses the discretion to grant prejudgment interest on an ERISA award as a matter of equity. Ford v. Uniroyal Pension Plan, 154 F.3d 613, 616 (6th Cir. 1998). Given Hartford's failure to articulate a reason for its denial, the need to make Plaintiff whole and to avoid any financial incentive to withhold benefits wrongfully, the Court concludes that equity requires an award of prejudgment interest to give Plaintiff the full value of her benefits for which she paid. The rate of prejudgment interest will be determined under Tennessee law unless Hartford can demonstrate that this state law overcompensates Plaintiff. Ford, 154 F.3d at 619

As to whether to award attorney fees, in Shelby County Health Care Corp. v. Southern Council of Indus. Workers Health and Welfare Trust, 203 F.3d 926 (6th Cir. 2000), the Sixth Circuit listed the factors to be considered:

> Under 29 U.S.C. § 1132(g)(1) a "court in its discretion may allow a reasonable attorney's fee and costs of action to either party." A district court must consider the following factors in deciding whether to award attorney fees, (1) the degree of the opposing party's culpability or bad faith; (2) the opposing party's ability to satisfy an award of attorney's fees; (3) the deterrent effect of an award on other persons under similar circumstances; (4) whether the party requesting fees sought to confer a common benefit on all participants and beneficiaries of an ERISA plan or resolve significant legal questions regarding ERISA; and (5) the relative merits of the parties' positions. Schwartz v. Gregori, F.3d 1116, 1119 (6th Cir. 1998) (quoting Secretary of Dep't of Labor v. King, 775 F.2d 666, 669 (6th Cir. 1985)), cert. denied, 526 U.S. 1112, 119 S.Ct. 1756, 143 L.Ed.2d 788 (1999).

Id. at 936.

As applied here, the Court finds that Hartford's culpability is high and Hartford can afford an award of fees. A fee award serves as a deterrent to conclusory statements that are devoid of specific and fact-supported reasons for denial of benefits. An award of attorney fees would benefit

other similarly situated employees whose benefits were denied without a reasoned basis for the denial. Finally, as reflected in the Court's conclusions, Plaintiff has a much stronger position in the merits. Thus, the Court awards Plaintiff her attorney fees and costs that will be determined in accordance with federal law and Local Rules.

For the reasons stated above, the Court concludes that Plaintiff's motion for judgment on the record (Docket Entry No. 21) should be granted; that Defendant Hartford's motion for judgment on the record (Docket Entry No. 22) should be denied; and that the Premier Defendants joint motion for judgment on the record (Docket Entry No. 24) should be denied as moot.

An appropriate Order is filed herewith.

Entered this the 1st of June, 2006.

WILLIAM J. HAYNES, JR.
United States District Judge



Case 1:05-cv-00012 Document 36 Filed 06/01/06 Page 19 of 19 PageID #: 301